**UNITED STATES of America**

**v.**

**KAYBEL, INC., Harry Bell,**
**Abraham Kaye,**

**Kaybel, Inc., Appellant in No. 17776,**
**Harry Bell, Appellant in No. 17777,**
**Abraham Kaye, Appellant in No. 17778.**

**Nos. 17776–17778.**

United States Court of Appeals,
Third Circuit.

Argued May 4, 1970.

Decided Aug. 10, 1970.

Rehearing Denied Sept. 8, 1970.

Sidney Slauson, Englewood, N. J., for appellants.

W. Hunt Dumont, Asst. U. S. Atty., Newark, N. J. (Frederick B. Lacey, U. S. Atty., Newark, N. J., William W. Goodrich, Asst. Gen. Counsel, Food, Drugs & Environmental Health Division, John C. Young, Atty., Dept. of Health, Education & Welfare, Washington, D. C., on the brief) for appellee.

Before HASTIE, Chief Judge, and MARIS and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

Kaybel, Inc., a wholesale drug distributor, its president and its secretary-treasurer were charged with introducing a "new drug," Enovid 5 mg., into interstate commerce in violation of 21 U.S.C. § 355(a), in that no approved new drug application was effective with respect to that drug. After trial before a jury, and after the court had denied the defendants' motion for an acquittal, the defendants were convicted and each fined $1,000. These appeals followed.

Enovid 5 mg., a drug used primarily for ovulation control, was developed after several years of research by G. D. Searle & Co. Before placing this drug on the market, Searle filed a new drug application with the Food and Drug Administration as required by the Food, Drug and Cosmetic Act. 21 U.S.C. § 355. The application was approved and became effective on March 9, 1961. While this approval was in effect, Kaybel repackaged Enovid 5 mg. tablets from the manufacturer's original 500-unit bottles into its own 100-unit bottles, and sold the repackaged drug in interstate commerce. The government contends that, despite the approved new drug application in effect with respect to Enovid 5 mg., Kaybel was required under 21 U.S.C. § 355(a) to file and secure approval of its own additional new drug application in order to repackage and wholesale that drug. We disagree.

It merits emphasis at the outset that the defendants were not charged with adulterating or misbranding Enovid 5 mg. in violation of 21 U.S.C. §§ 351 and 352. Indeed, the Enovid 5 mg. tablets sold by Kaybel were properly labeled and were the very tablets manufactured by Searle and approved by the Food and Drug Administration. The government contends solely that the defendants violated § 355(a) by repackaging those tablets without securing a separate new drug approval in their own name.

The defendants' conduct in relying upon the new drug approval secured by Searle in order to repackage and wholesale Enovid 5 mg., was entirely consistent with the wording of section 355(a). That section requires only that a new drug approval be in effect before a new drug is marketed. Section 355(a) provides that:

"No person shall introduce or deliver for introduction into interstate commerce any new drug, unless *an* approval of *an* application filed pursuant to subsection (b) of this section is effective with respect to such drug." (italics added).

It would require an unwarranted distortion of the normally understood meaning of this rather simple language either to characterize the product marketed by the appellants as a drug different from the "new drug" for which approval already had been obtained or to construe the statute as requiring more than one application and approval for the same "new drug."

21 U.S.C. § 355 was enacted in direct response to the elixir sulfanilamide tragedy of 1937 in which approximately 100 persons died as a result of using an untested drug. Congress was concerned in this particular section of the Act with the specific problem of testing new drugs for safety prior to marketing, rather than with preserving the integrity of those drugs through the marketing process. *See* House Report No. 2139, 75th Cong., 3d Sess. to accompany Draft S–5; H. Toulman, Law of Foods, Drugs and Cosmetics, Ch. 27 (2d ed. 1963).

Other procedures exist within the broad reach of other provisions of the Act which safeguard against contamination of new drugs by repackagers. As noted, adulteration and misbranding are specifically prohibited by sections 351 and 352. In addition, repackagers of drugs are required to register annually and to open their facilities to inspection by Food and Drug Administration officials. 21 U.S.C. §§ 360 and 374.

Also, the Food and Drug Administration has proposed detailed regulations controlling the methods and conditions of drug repackaging. 32 F.R. 3470 (March 2, 1967).

Finally, we note that this seems to be the first criminal prosecution in the 30-year history of section 355(a) that has been based on the theory that that section requires a repackager of approved drugs to secure a separate new drug approval.[1] Even if the broad, remedial purpose of the Act would be effectively served by such an anomalous interpretation of section 355(a), criminal liability should not now be imposed for conduct which was entirely consistent with the language and legislative history of the section.[2]

The defendants were entitled to acquittal as a matter of law.

The judgment will be reversed.

1. The government argues that our opinion in United States v. Various Articles of Drugs, 3d Cir. 1964, 332 F.2d 286, supports its present contention. However, the only contention on that appeal was that a drug had been misbranded within the meaning of section 352(a). We did not cite section 355 and its reach was not a matter then in question.

2. The appellants in their brief claim that it is accepted business practice for wholesalers to repackage without a separate new drug approval for that purpose, but there is no evidence to that effect in the record.